UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

---

United Steelworkers of America, AFL-CIO-CLC, and United Steelworkers of America Local 4108,

Plaintiffs,

v.

LTV Steel Mining Company, a Minnesota limited partnership consisting of Youngstown Erie Corporation, a Minnesota corporation, Erie B Corporation, a Minnesota corporation, and Erie I Corporation, a Minnesota corporation,

Defendant.

Civil No. 01-1966 (RHK/RLE)
**MEMORANDUM OPINION AND ORDER**

---

John G. Engberg, Mark W. Bay, and Richard D. Kampa, Peterson, Engberg & Peterson, Minneapolis, Minnesota, for Plaintiff.

Michael R. Stewart, Faegre & Benson, L.L.P., Minneapolis, Minnesota, and Kenneth B. Stark and Frank W. Buck, Duvin, Cahn & Hutton, Cleveland Ohio, for Defendant.

Michael J. Vanselow, Assistant Attorney General, State of Minnesota, Saint Paul, Minnesota for the State of Minnesota.

Lawrence R. Commers and Joseph D. Roach, Mackall, Crounse & Moore. P.L.C., Minneapolis Minnesota, for Cliffs Erie, LLC.

---

## Introduction

This matter came on for hearing before the undersigned in Duluth, Minnesota, on



FILED OCT 30 2001
RICHARD D. SLETTEN, CLERK
JUDGMENT ENTD________
DEPUTY CLERK________

Monday, October 29, 2001, on Plaintiffs United Steelworkers of America, AFL-CIO-CLC, and United Steelworkers of America Local 4108's (hereinafter, collectively, "USWA") Motion for a Temporary Restraining Order. USWA seeks to enjoin the sale by Defendant LTV Steel Mining Company ("LTV") of its Taconite Harbor Power Plant facility in Taconite Harbor, Minnesota, pending the completion of labor arbitration proceedings in accordance with the terms of a collective bargaining agreement between USWA and LTV. For the reasons set forth below, the Court will deny the motion.

## Background

Plaintiff Local 4108 of the United Steelworkers of America is a labor organization representing production and maintenance employees at the Taconite Harbor Power Plant facility in Taconite Harbor, Minnesota. Plaintiff United Steelworkers of America, AFL-CIO-CLC, is an unincorporated international labor organization. Defendant LTV is a Minnesota limited partnership consisting of Youngstown Erie Corporation, Erie B Corporation, and Erie I Corporation, all of which are Minnesota corporations.

For many years, LTV has operated a taconite ore mining facility near Hoyt Lakes, Minnesota, and a power plant at Taconite Harbor. LTV mined and beneficiated taconite ore into enriched iron pellets that were transported by railroad to Taconite Harbor where the pellets were loaded onto ships at the dock. The power plant at Taconite Harbor has generated electric power for the mine and has also generated electricity that has been sold to commercial buyers. The permit under which the Taconite Harbor power plant has

been operating provides that 10% of the plant's capacity can be sold commercially. Over the last several years, LTV has sold approximately 6% of the plant's power production commercially.

USWA and LTV are parties to two agreements that have been referenced to the Court. On August 1, 1999, USWA and LTV entered into a collective bargaining agreement ("the 1999 CBA").[1] USWA and LTV are also parties to a December 21, 2000 memorandum of agreement specifically relating to the shutdown of LTV ("the 2000 Shutdown MOA"). Pursuant to Appendix CC of the 1999 CBA, LTV agreed to certain limitations on its ability to sell, convey, assign, or transfer any plant (or significant part thereof) that (a) is covered by a labor agreement between LTV and the USWA and (b) has not been permanently shut down for at least eight months (hereinafter, a "covered plant").[2] LTV agreed that it would not transfer a covered plant to a party "who intends to

---

[1] The terms of the 1999 CBA were restated and modified by a Modified Labor Agreement approved by the United States Bankruptcy Court for the Northern District of Ohio on July 30, 2001 ("the 2001 MLA").

[2] Appendix CC of the 1999 CBA defines "Permanently shut down for at least 8 months" to mean that certain notification requirements and obligations of subsection XVI-A of the 1999 CBA have been satisfied

> and that for at least 8 months following the expiration of the notification periods provided for in Subsection XVI-A, (1) no part of the operation in question has operated other than to perform maintenance tasks associated with mothballing the operations, (2) no improvements have been made, and (3) the Company has acknowledged entitlements to and is processing and/or paying, as appropriate, shutdown benefits in accordance with the Labor Agreement and applicable benefits agreements

continue to operate the business as the Company had" unless three conditions were satisfied prior to the closing date of the sale:

> (1) The buyer has already entered into an agreement with the USWA recognizing the USWA as the bargaining representative for the employees within existing bargaining units;
>
> (2) The buyer has already entered into an agreement with the USWA establishing the terns and conditions of employment to be effective as of the closing date; and
>
> (3) If LTV asks, USWA and LTV have negotiated the release and discharge of LTV from any obligations, responsibilities and liabilities to the USWA and the employees.

The 2000 Shutdown MOA anticipated that the transfer of a covered plant might occur more than eight months after the plant had been permanently shut down. Therefore, LTV agreed that,

> for at least 2 years from the cessation of mining and pellet production, it will not sell, convey, assign or otherwise transfer the assets of the mine to any party (Buyer) who intends to operate the business as the Company had prior to the closing date unless the Buyer shall have agreed to recognize the United Steelworkers of America . . . as the bargaining representative within the existing bargaining unit.

On December 29, 2000 – eight days after the parties signed the 2000 Shutdown MOA – LTV filed a Chapter 11 bankruptcy petition in the United States Bankruptcy Court for the Northern District of Ohio. On January 12, 2001, LTV shut down the Hoyt Lakes Mine and, several days later, shut down the Taconite Harbor Power Plant.[3]

---

[3] Currently, about 18 members of the USWA work at the Taconite Harbor Power Plant to maintain the facility. When the Hoyt Lakes mine was operational, there were

After several months of negotiation, on October 8, 2001, LTV entered into an Asset Purchase Agreement by which the Hoyt Lakes Mine would be sold to Cliffs Erie L.L.C., and the Taconite Harbor Power Plant would be sold to Allete, Inc., d/b/a Minnesota Power & Light Company, or its wholly-owned subsidiary, Rainy River Energy Corporation-Taconite Harbor ("Rainy River"). USWA alleges, based on information and belief, that MS&P or Rainy River intends to begin producing electricity at the Taconite Harbor Power Plant shortly after acquiring those assets.[4]

On October 17, 2001, LTV informed USWA of its position that the successorship clause did not apply to the sale of the Taconite Harbor Power Plant because "the assets of the mine are not being sold to a party 'who intends to operate the business as the Company had prior to the closing date.'" On October 19, 2001, the Local 4108 filed a grievance alleging that LTV had violated, inter alia, Appendix CC of the 1999 CBA and the 2000 Shutdown MOA. USWA requested expedited arbitration of the matter.

On October 22, USWA filed a limited objection with the Bankruptcy Court, requesting an order providing that the closing on the sale of the power plant be conditioned on LTV's compliance with the disputed provisions of the 1999 CBA and/or

---

between thirty and thirty-five United Steelworker employees at the power plant.

[4] MP&L has a collective bargaining agreement with the International Brotherhood of Electrical Workers ("IBEW") which contains an "after acquired" clause. Pursuant to that clause, employees in facilities acquired by MP&L will be accreted to the bargaining unit represented by the IBEW.

the 2000 Shutdown MOA. By an Order dated October 25, 2001, the Bankruptcy Court overruled USWA's objection. The Bankruptcy Court determined that it did not have subject matter jurisdiction to construe the terms of the labor agreements on which the USWA was relying. The Bankruptcy Court further concluded that there was not an adequate factual record for it to decide whether the buyer's use of the power plant would fall within the scope of the successorship provision. This action, and USWA's motion for a temporary restraining order, followed.

## Analysis

### Application of the Automatic Stay

USWA seeks an order "restraining and enjoining Defendants LTV Steel Mining Company, its officers, and any other persons or entities under its control from closing on the sale of the Taconite Harbor Power Plant pending completion of an expedited arbitration proceeding concerning Plaintiffs' successor clause-related grievance before" a permanent Board of Arbitration, and directing LTV to proceed to expedited arbitration of the successor clause-related grievance, as required by the collective bargaining agreement. LTV argues as a threshold matter, that the relief USWA requests is barred by the automatic stay provision of the Bankruptcy Code, 11 U.S.C. § 362.

The filing of a bankruptcy petition "operates as a stay, applicable to all entities," of "any act to . . . exercise control over the property of the estate." 11 U.S.C. § 362(a)(3). The automatic stay continues in effect against property of the estate until such time as the

property is no longer property of the estate. 11 U.S.C. § 362(c)(1). The Court expressly finds that, pending a closing on the sale of the Taconite Harbor Power Plant, the power plant is still property of the debtor-in-possession's estate.

Numerous exceptions to the automatic stay are set forth in subsection (b) of § 362. USWA makes no argument that any of the statutory exceptions apply. Rather, USWA argues that the Bankruptcy Court essentially lifted the automatic stay when it determined that it lacked jurisdiction to construe the labor agreements between the parties and indicated that USWA "has available remedies under applicable non-bankruptcy law." (In re LTV Steel Co. et al., No. 00-43866, Oct. 25, 2001 Order at 2.) Section 362(d) of the Bankruptcy Code provides that "on request of a party in interest and after notice and a hearing," the Bankruptcy Court may grant relief from the automatic stay, such as by terminating, annulling, modifying, or conditioning the stay where the requisite showing has been made pursuant to subsection (d)(1) or (d)(2). USWA acknowledges that it did not bring a motion for relief from the automatic stay as required by the Bankruptcy Code and Bankruptcy Rules. The October 25 Order does not address or even reference the automatic stay. Accordingly, this Court concludes that the Bankruptcy Court's October 25 Order cannot fairly be read as lifting the stay. This Court cannot, sua sponte, lift the automatic stay -- that is a matter for the Bankruptcy Court. Accordingly, the automatic stay operates to bar this Court from granting the relief requested by LTV – preventing the transfer of the power plant pending expedited arbitration.

In view of the foregoing, it is not necessary for the Court to reach the Dataphase factors that govern whether injunctive relief is warranted. The Court observes, however, that from the evidence presented at the hearing regarding the scope and application of the 1999 Agreement's expedited arbitration procedures, USWA has not established that its grievance regarding the successorship clause is amenable to expedited arbitration.

**Conclusion**

Based on the foregoing, and all of the files, records and proceedings herein, **IT IS ORDERED** that Plaintiffs' Motion for a Temporary Restraining Order (Doc. No. 2) is **DENIED**.

Dated: October 30, 2001

RICHARD H. KYLE
United States District Judge